1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                          SAN JOSE DIVISION

7

8    E.P.,                                  Case No.  22-cv-05830-VKD

9                    Plaintiff,

10          v.                              **ORDER RE CROSS-MOTIONS FOR
                                            SUMMARY JUDGMENT**
11   MARTIN O'MALLEY,
                                            Re: Dkt. Nos. 17, 19
12                   Defendant.

13

14          Plaintiff E.P. appeals a final decision of the Commissioner of Social Security

15   ("Commissioner")[1] denying her application for disability insurance benefits under Title II of the

16   Social Security Act ("Act"), 42 U.S.C. § 423, *et seq.*  E.P. contends that the ALJ (1) did not

17   properly evaluate certain medical opinions, (2) failed to provide sufficient reasons for discounting

18   her allegations of mental dysfunction, and (3) erred in concluding that she can perform past

19   relevant work as a dry cleaner helper and animal caretaker, and therefore is not disabled.

20          The parties have filed cross-motions for summary judgment.  Dkt. Nos. 17, 19, 20.  The

21   matter was submitted without oral argument.  Upon consideration of the moving and responding

22   papers and the relevant evidence of record, for the reasons set forth below, the Court grants in part

23   and denies in part E.P.'s motion for summary judgment, grants in part and denies in part the

24   Commissioner's cross-motion for summary judgment, and remands this matter for further

25   administrative proceedings consistent with this order.[2]

26   ─────────────────────────

27   [1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social
     Security, is substituted as defendant in place of Kilolo Kijakazi.

28   [2] All parties have expressly consented that all proceedings in this matter may be heard and finally

1

**I.      BACKGROUND**

2

E.P. was born in 1978 and was nearly 40 years old at the alleged onset of disability in

3

2018.  She completed high school and took some college courses.  She has worked as a medical

4

clerk, dry cleaner helper, and animal caretaker.  *See* AR[3] 45, 50-53, 56-57, 319, 338.

5

E.P. filed an application for disability insurance benefits on July 13, 2019.  *See* AR 81.

6

She alleged that she has been disabled since August 31, 2018 due to major depression with

7

anxiety, congestive heart failure, stroke, and liver disease.  *See* AR 81, 318.  Her application was

8

denied initially and on reconsideration.  AR 81-132.  An ALJ held a hearing on July 29, 2021, at

9

which a vocational expert ("VE") testified.  AR 35-80.

10

On August 18, 2021, the ALJ issued an unfavorable decision.  AR 16-29.  She found that

11

E.P. last met the insured status requirements of the Act on June 30, 2021.[4]  AR 18.  The ALJ

12

found that E.P. did not engage in substantial gainful activity during the period from her alleged

13

onset date of August 31, 2018 through the June 30, 2021 date when E.P. was last insured.  *Id.*  The

14

ALJ further found that E.P. has the following severe impairments:  "a mental impairment

15

diagnosed to include major depressive disorder with anxiety, dysthymia, and alcohol use disorder;

16

cardiomyopathy[;] [and] chronic liver disease secondary to alcohol abuse."  *Id.*[5]  The ALJ found

17

that the severity of E.P.'s mental impairments, considered singly and in combination, do not cause

18

more than mild or moderate limitations in E.P.'s abilities to perform basic mental work activities,

19

and do not meet or medically equal the criteria of Listings 12.04 and 12.06.  AR 20-21.

20

21

adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 10.

22

[3] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 15.

23

24

[4] To qualify for disability insurance benefits, a claimant must demonstrate that he or she was disabled prior to the last insured date, which is referred to as the "date last insured."  *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (citing 42 U.S.C. § 423(c)).

25

26

[5] Additionally, the ALJ found that E.P. has non-severe impairments of stroke and obesity; that E.P.'s "alleged seizure-like activity is a nonmedically determinable impairment"; and that the severity of E.P.'s physical impairments do not meet or medically equal the severity of one of the impairments listed in the Commissioner's regulations.  AR 19-20.  E.P. does not challenge any of the ALJ's findings regarding her physical impairments.

27

28

United States District Court
Northern District of California

1    The ALJ determined that E.P. has the residual functional capacity ("RFC") to perform light

2    work, with the following additional limitations:

3          [E.P.] is limited to frequent climbing of ramps and stairs; frequent
           balancing, stooping, kneeling, crouching, and crawling; never
4          climbing ladders, ropes, or scaffolds; never working at unprotected
           heights; never working with moving mechanical parts; never
5          operating a motor vehicle; performing simple, routine tasks;
           performing simple work-related decisions; occasional interaction
6          with the public (better working with things rather than people); and
           using judgment and dealing with changes that are consistent with
7          simple work.

8    AR 21.  The ALJ found that through her date last insured, E.P. was capable of performing her past

9    relevant work as a dry cleaner helper and an animal caretaker, as those jobs actually were

10   performed.  AR 28-29.  Accordingly, the ALJ concluded that E.P. was not disabled at any time

11   from August 31, 2018 through June 30, 2021.  AR 29.

12   The Appeals Council denied E.P.'s request for review of the ALJ's decision.  AR 1-7.  E.P.

13   filed the present action seeking judicial review of the decision denying her application for benefits.

## II.   LEGAL STANDARD

15   Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

16   decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not

17   supported by substantial evidence or if it is based upon the application of improper legal

18   standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v.*

19   *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context,

20   the term "substantial evidence" means "more than a mere scintilla" but "less than a

21   preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to

22   support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148,

23   1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by*

24   *regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When

25   determining whether substantial evidence exists to support the Commissioner's decision, the Court

26   examines the administrative record as a whole, considering adverse as well as supporting

27   evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501

28   (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court

United States District Court
Northern District of California

3

1    must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted);

2    *Morgan*, 169 F.3d at 599 (citation omitted).

3    **III.    DISCUSSION**

4          E.P. contends that the ALJ (1) did not properly evaluate certain medical opinions,

5    (2) failed to provide sufficient reasons for discounting her allegations of mental dysfunction, and

6    (3) erred in concluding that she can perform past relevant work as a dry cleaner helper and animal

7    caretaker.

8          **A.      Medical Opinions**

9          E.P. contends that the ALJ did not properly evaluate the opinions of psychologist D. Gross,

10   Psy.D. (a state agency consultant), Kathleen Akiyama, M.D. (E.P.'s treating psychiatrist), and

11   Caroline Salvador-Moses, Psy.D. (a consultant who examined E.P.).

12          Under the regulations that apply to E.P.'s application, the Commissioner no longer gives

13   specific evidentiary weight to medical opinions, including the deference formerly given to the

14   opinions of treating physicians.  Instead, the Commissioner evaluates the "persuasiveness" of all

15   medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with

16   the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source

17   has familiarity with the other evidence in the claim or an understanding of our disability program's

18   policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c; *see also Woods v. Kijakazi*, 32

19   F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of

20   medical opinions—in which we assign presumptive weight based on the extent of the doctor's

21   relationship with the claimant—no longer applies.").  "Now, an ALJ's decision, including the

22   decision to discredit any medical opinion, must simply be supported by substantial evidence."

23   *Woods*, 32 F.4th at 787.

24          Supportability and consistency are considered the most important factors, and the ALJ is

25   required to explicitly address them in his or her decision.  20 C.F.R. § 404.1520c(b)(2).

26   "Supportability means the extent to which a medical source supports the medical opinion by

27   explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92 (quoting 20

28   C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is

United States District Court
Northern District of California

4

'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).

## 1.    D. Gross, Psy.D.

Dr. Gross is a state agency psychological consultant who reviewed E.P.'s records, including the October 30, 2019 questionnaire completed by Dr. Akiyama and the December 27, 2019 mental status evaluation conducted by Dr. Salvador-Moses.  On January 27, 2020, at the initial level of review of E.P.'s application for disability benefits, Dr. Gross determined that E.P. had no more than "moderate" limitations in any area of mental functioning.  *See* AR 92-94. Specifically, Dr. Gross found that E.P.'s mental functioning is "[n]ot significantly limited," except for moderate impairments in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychological symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.  AR 92-93.  Dr. Gross further explained that E.P. "should be able to meet the following criteria on a sustained basis in a competitive, remunerative work context where there is relatively low interpersonal contact (e.g., low contact with the public; working alone or with limited contact with supervisor or co-workers)," namely:

> To understand, carry out, and remember simple instructions (e.g., understanding and learning terms, instructions, and procedures; maintaining attention/concentration for approximately 2 hour blocks; understanding, carrying out, & remembering 1 to 2 step instructions; recognizing a mistake and correcting it; being able to work consistently and at a reasonable pace for approximately 2 hour segments between arrival, first break, lunch, second break, and departure; attending work regularly without excessive early departures or absences during the typical 40 hour work week); to make simple judgments and work-related decisions; to respond appropriately to supervision, coworkers and work situations (e.g.,

1

> asking simple questions or requesting assistance, accepting
> instructions, responding appropriately to criticism from supervisors,
> cooperating with others, appropriately handling disagreements with
> others, not distracting others or exhibiting behavioral extremes); and
> to deal with changes in a routine work setting.

AR 94.

On April 27, 2020, upon reconsideration of E.P.'s application for benefits, Larry Kravitz, Psy.D. determined that the overall evidence of record was consistent with Dr. Gross's assessment, noting that "[w]hile moderate limitations are indicated, [E.P.] retains the ability to perform simple, routine work tasks mentally." AR 108.

In April 2020, at the reconsideration level of review, psychologist Tawnya Brode, Psy.D. originally assessed E.P. with listing-level mental impairments. AR 106, 109. In June 2020, at the request of the Social Security Administration's Disability Quality Branch, Dr. Brode revised her assessment and found that E.P. had no more than moderate limitations in any area of mental functioning. AR 122, 123, 127-129.

The ALJ found "persuasive" Dr. Gross's assessment of E.P.'s mental functioning, as well as the assessments of the agency consultants at the reconsideration level that E.P. could perform simple, routine work with limited personal contact. AR 26. The ALJ explained that these opinions "are supported by the record" and are "also consistent with [E.P.]'s activities of daily living." *Id*. Here, the ALJ noted records showing that in October 2018,[6] E.P. was hospitalized after an attempted suicide (triggered by the loss of custody over her two children and amounts she owed for child support), and was prescribed Zoloft (sertraline) and Trazodone upon her discharge from the hospital. AR 26 (citing AR 667, 795). The ALJ further observed that "[s]ubsequent records showed her condition improved with treatment." AR 26. For example, the ALJ stated that a December 2018 mental status exam showed that E.P. had a depressed mood, but was otherwise unremarkable; and during a February 2019 assessment, E.P. reported that "when she takes sertraline, it is effective, her depression remits and she does not have any side effect." *Id*. (citing AR 669, 671). The ALJ also noted that September 2019 treatment records state that E.P.'s

---

[6] Although the ALJ stated that E.P. was hospitalized in September 2018, records indicate that the hospitalization occurred in October 2018. *See* AR 667; *see also* AR 545-546.

United States District Court
Northern District of California

United States District Court
Northern District of California

"depression is much improved and her anxiety level improved as well," "[E.P.] reported doing well," she was compliant with her medications, and she did not complain of side effects "aside from sleeping too deeply with trazodone." *Id*. (citing AR 698, 699).  The ALJ acknowledged that Dr. Salvador-Moses's December 2019 examination showed that E.P. had a disheveled appearance, a thought process evidencing flashbacks and preoccupation with traumatic events, as well as "poor memory, impaired insight and judgment, inability to perform serial seven's, poor math computation, poor abstract reasoning, suboptimal fund of information." *Id*. (citing AR 815-819).  However, the ALJ correctly observed that Dr. Salvador-Moses's report also showed that E.P. had "adequate grooming and hygiene, good eye contact, hyperverbal but coherent speech, friendly and cooperative behavior, euthymic mood and congruent affect, and intact orientation," and that E.P. "denied any hallucinations or delusions, suicidal or homicidal thoughts, and any psychotic symptoms." *Id*. (citing AR 815-819).  As observed by the ALJ, "[t]reatment records in 2020 showed [E.P.]'s mental health was stable and she was taking her medications as prescribed." *Id*. (citing AR 964, 967, 1088).  Additionally, more recent treatment records from the first half of 2021 "continued to show [E.P.] reported she was doing well, and she was taking her medications," with mental status exams showing that E.P. "was calm and cooperative with normal speech, good mood, coherent thought process, good insight and judgment, fair impulse control, and no suicidal ideations." *Id*. (citing 1072, 1074, 1076, 1083, 1087).  With respect to her activities of daily living, the ALJ stated that E.P. reported that "she was able to manage her personal care, prepare simple meals, shop for groceries, use social media, use public transportation, and perform household chores." *Id*. (citing AR 65-67, 350-357).

E.P. does not challenge the ALJ's decision to credit the state agency psychologists' opinions as "persuasive" or the ALJ's explanation for doing so.  Nor does she take issue with the ALJ's finding that Dr. Brode's original April 27, 2020 listing-level assessment is "not persuasive because it is not supported by the record which showed with treatment and alcohol reduction [E.P.] functioned better." AR 26.  Rather, with respect to Dr. Gross's opinion, the sole basis for error argued by E.P. is that the ALJ did not fully incorporate all of the social limitations assessed by Dr. Gross.  Specifically, E.P. argues that the ALJ erred in "formulat[ing] an RFC that restricted

1   [E.P.] to occasional public interaction," but which "did not restrict [E.P.]'s interaction with

2   coworkers and supervisors," and failed to explain this alleged departure from Dr. Gross's

3   assessment.  Dkt. No. 17 at 8-9.

4         As noted above, Dr. Gross assessed moderate impairment of E.P.'s "ability to get along

5   with coworkers or peers without distracting them or exhibiting behavioral extremes," and further

6   explained that E.P. should be able "to respond appropriately to supervision, coworkers and work

7   situations" in a "work context where there is relatively low interpersonal contact (e.g., low contact

8   with the public, working alone or with limited contact with supervisor or co-workers)[.]"  AR 93,

9   94.  Although the ALJ did not specifically mention "supervisors" or "coworkers" in her RFC, the

10  Court agrees with the Commissioner that the ALJ's RFC determination that E.P. is limited to

11  "performing simple, routine tasks" and is "better working with things rather than people" in a

12  work environment consistent with "simple work" adequately accounts for any limitations in E.P.'s

13  ability to work with supervisors or coworkers.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

14  1223 (9th Cir. 2010) ("The ALJ took into account [plaintiff]'s 'marked limitations in social

15  functioning' by 'limiting [him] to work in which there is no public contact, and where it is

16  recognized that he works best alone."); *Watson v. Kijakazi*, No. 1:21-cv-017170ADA-HBK, 2023

17  WL 131062, at *3 (E.D. Cal. Jan. 9, 2023) ("[A]n ALJ's RFC findings need only be consistent

18  with relevant assessed limitations and not identical to them.").  E.P. has not convincingly

19  demonstrated how or why the ALJ's RFC assessment is inconsistent with Dr. Gross's opinion that

20  E.P. is able to work in a context "where there is relatively low interpersonal contact."  AR 93.

21        The Court finds no error with respect to the ALJ's assessment of Dr. Gross's opinion.

22             **2.    Kathleen Akiyama, M.D.**

23        Psychiatrist Kathleen Akiyama, M.D. of the San Mateo County Behavioral Health &

24  Recovery Services began treating E.P. in February 2019 and saw her for therapy sessions every

25  one or two months.  AR 662.  On October 30, 2019, Dr. Akiyama completed a "Mental Disorder

26  Questionnaire Form" (AR 658-662), in which she noted E.P.'s "[l]ong history of depression with

27  multiple suicide attempts" that were "impulsive and could have resulted in death," and identified

28  major stressors as E.P.'s loss of custody over her two children and "[h]igh conflict" with her

United States District Court
Northern District of California

8

1  former partner/father of her children.  AR 658, 659, 661.  Dr. Akiyama stated that while E.P.

2  showed "[n]o signs of psychosis" and had a "[f]ull grasp of reality," her affective status is

3  characterized by "[r]ecurrent depressive episodes that lead to suicidal ideation [and] behaviors,

4  super[-]imposed on a chronic level of depression, chronic anxiety over situational stressors, [and]

5  [p]oor sleep."  AR 660.

6         Dr. Akiyama described E.P.'s mental status as "pleasant and cooperative," stating that she

7  "[a]ppears genuinely interested in care and wishes to get better" and demonstrated no

8  inappropriate, hostile, or violent behaviors.  AR 659.  Dr. Akiyama also noted that E.P. was

9  "oriented x4," had an "[i]mpaired memory" ("short-term, intermediate, [and] long-term")" and

10  "[i]mpaired concentration," as well as "significant difficulty keeping [appointments]," with

11  "multiple no shows."  AR 658, 659.  Dr. Akiyama diagnosed E.P. with major depressive disorder,

12  recurrent, moderate; alcohol use disorder, severe, in early remission; and persistent depressive

13  disorder.  AR 662.  She prescribed Zoloft for depression and Trazodone for insomnia.  *Id.*

14         According to Dr. Akiyama, E.P. "requires assistance from [her] boyfriend for almost all

15  activities" and [n]eeds encouragement to attend to self-care [and] [appointments]."  AR 660.  Dr.

16  Akiyama further opined that E.P. "is not able to sustain activity requiring focused attention due to

17  depressed mood and anxiety," is "unable to remember steps needed for simple tasks," and has

18  "[p]oor follow through and impaired task completion."  AR 661.  Dr. Akiyama stated that E.P.

19  "would not be able to keep up with a normal work routine" or "engage in work-related activities at

20  this time due to her impairments."  *Id.*  Dr. Akiyama further noted that E.P.'s prognosis is "poor"

21  and that her condition is not expected to improve "over the next 1 year at least."  AR 662.

22         The ALJ found Dr. Akiyama's opinion "not persuasive," explaining that it "was made less

23  than a year after the alleged onset date and not consistent with the other evidence in the record

24  showing that at one year after treatment and alcohol avoidance, or reduction in use, [E.P.] was

25  more functional physically and mentally."  AR 27.  The Commissioner concedes that the ALJ's

26  finding regarding the date of Dr. Akiyama's opinion—which issued more than a year after E.P.'s

27  August 31, 2018 alleged onset date—is incorrect, but maintains that the error is harmless because

28  the ALJ otherwise provided legally sufficient reasons for discounting the supportability and

consistency of Dr. Akiyama's opinion.  *See* Dkt. No. 19 at 19 n.12.  E.P. contends that the ALJ did not provide sufficient reasons supported by substantial evidence for discrediting Dr. Akiyama's opinion, and that the ALJ's error in the date of Dr. Akiyama's opinion suggests that the ALJ may not have properly considered evidence that may support a closed period of disability through at least the October 30, 2019 date of Dr. Akiyama's opinion.  Dkt. No. 17 at 11.  For the reasons discussed below, the Court agrees with E.P.

The evaluation of medical opinions must be based on a "holistic view of the record." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  A few positive observations do not render a medical professional's diagnosis unsupported.  *Smith v. Kijakazi,* 14 F.4th 1108, 1115 (9th Cir. 2021) ("Physician reports of improvement are [] not sufficient to undermine the repeated diagnosis of the alleged mental health conditions.") (cleaned up).  The symptoms of mental health conditions often "wax and wane in the course of treatment.  Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).  Moreover, reports of improvement must be examined in context—a relative improvement in a claimant's symptoms may not mean they are not disabled.  *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, the ALJ stated that "Dr. Akiyama's opinion is not supported by the record which showed depressed/anxious mood and affect but otherwise generally normal mental status examinations."  AR 27 (citing AR 669, 692, 696-697, 698, 702, 720, 876, 877).  However, Dr. Akiyama opined that it was precisely E.P.'s "depressed mood and anxiety" that impacted her memory, concentration, and abilities to complete tasks and to otherwise maintain a normal work routine.  *See* AR 661.  Additionally, Dr. Akiyama noted that E.P. was fully oriented, "pleasant and cooperative," "genuinely interested in care and wishes to get better," showed "[n]o inappropriate behaviors" and "[n]o signs of psychosis," and had a "[f]ull grasp of reality."  AR 659, 660.  The

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

1    record therefore does not substantiate the ALJ's finding that Dr. Akiyama's opinion is not

2    supported by mental status examinations that fully corroborate E.P.'s depression and anxiety and

3    were "otherwise generally normal."

4         Moreover, the fact that the cited mental status exams generally show appropriate hygiene

5    and grooming, unremarkable speech and thought processes, and no apparent issues with

6    orientation does not necessarily call into question Dr. Akiyama's assessment of E.P.'s mental

7    functioning.  *See Rule v. Saul*, 859 F. App'x 754 (9th Cir. 2021) (fact that "[claimant's] thought

8    processes, memory, and concentration were within normal limits did not contradict [provider's]

9    conclusions that [claimant] was markedly impaired in her ability to maintain a schedule,

10   communicate with others in a work setting, or plan independently" and "were consistent with

11   [provider's] findings that [claimant] was depressed, anxious, and distractible"); *see also Bass v.

12   Berryhill*, No. 18-CV-07053-DMR, 2020 WL 1531324, at *7 (N.D. Cal. Mar. 31, 2020) ("[T]he

13   existence of some normal mental status exams is not enough on its own to discount [a provider's]

14   opinion."); *Kayleen N. v. Kijakazi*, No. 1:20-CV-03131-JTR, 2021 WL 5238780, at *4 (E.D.

15   Wash. July 29, 2021) ("While the ALJ was correct that the record did contain a number of normal

16   or mostly normal mental status exams, the ALJ's conclusion that Plaintiff's mental health

17   symptoms were generally stable is not supported.").

18        In addition to citing records of "otherwise generally normal" mental status examinations

19   (AR 665, 669, 692-693, 696-697, 698, 702, 720, 880, 876, 877), the ALJ cited several instances

20   between September 2019 and February 2020 where E.P. reported improved symptoms, with

21   abstinence from alcohol (or reduction in alcohol use) and positive responses to medication.  *See*

22   AR 27 (citing AR 698, 874, 877, 880).  However, the ALJ was required to examine all of this

23   evidence in the broader context of E.P.'s impairments.  *Attmore v. Colvin*, 827 F.3d 872, 877 (9th

24   Cir. 2016).  While these records do document some periodic improvements in E.P.'s mood and

25   condition, these same records and others from around that same period also contain evidence

26   demonstrating that E.P. sometimes experienced increased symptoms and setbacks due to

27   psychosocial stressors, despite taking her medication, and continued to demonstrate only fair or

28   poor judgment, insight, and impulse control.  For example, in a September 25, 2019 treatment

note, Dr. Akiyama noted that E.P. was compliant with her medication and that her "depression is much improved and her anxiety level improved as well." AR 698. However, in a treatment note dated that same day, clinical psychologist Casey Newland (one of E.P.'s treating providers) stated that E.P. continued to struggle with sobriety, demonstrated "very limited understanding of her triggers" for relapse and psychological decompensation, and had fair judgment, poor insight, and fair to poor impulse control. AR 696-697. Dr. Newland's October 1, 2019 treatment record noted that E.P. was "euthymic" and reported "I'm doing good!" (AR 692), but a December 20, 2019 treatment note documented E.P.'s report that she was "ok" and having difficulty sleeping, despite taking her medications (AR 880). On January 27, 2020, both Drs. Akiyama and Newland noted increased depression and anxiety, following an altercation with a roommate that required police intervention, and continued stressors stemming from her child custody issues. AR 875, 877. In her January 27, 2020 treatment note, Dr. Akiyama documented intermittent use of alcohol, and observed that E.P. was depressed and tearful and complained of "feeling continually triggered." AR 877. Dr. Newland administered the long-form DASS-42 (Depression Anxiety Stress Scales) to assess E.P.'s depression, anxiety, and stress. AR 875. E.P. initially "missed a considerable amount of questionnaire items unintentionally," and completed the test after Dr. Newland identified the skipped items. *Id*. Her score "indicated severe depression, extremely severe anxiety, and severe stress." *Id*. Dr. Newland additionally assessed E.P. with fair insight and judgment and fair to poor impulse control. AR 876. While a February 5, 2020 treatment record shows that E.P. reported feeling "calmer" and not drinking for three weeks (AR 874), in a March 9, 2020 treatment note, Dr. Akiyama observed that E.P. had "somewhat slurred" speech, appeared "depressed" and "dejected," documented E.P.'s report that she had been isolating and noted that she seemed to be having a "[l]imited response to sertraline." AR 971. Dr. Newland's March 9, 2020 treatment note documented E.P.'s complaints of increased depression, poor sleep quality, and ongoing struggle with sobriety, and observed that she was "depressed" and "tearful at times," had poor eye contact, and poor insight, judgment, and impulse control. AR 969.

To the extent the ALJ concluded that the "otherwise generally normal" mental status examinations and other cited records constitute a broader positive change in E.P.'s condition, the

1    record does not support this conclusion.  Rather, E.P.'s medical records, when viewed as a whole,

2    reveal mixed progress (particularly early in the relevant period) and instances of improvement

3    interspersed with reports of worsening symptoms and other setbacks in her progress, followed by a

4    general overall improvement later in the period.  It was error for the ALJ to "'cherry-pick"

5    treatment records that showed positive developments in E.P.'s condition without also considering

6    information in those records that reflected persistence or worsening of her symptoms.  *Garrison*,

7    759 F.3d at 1018 (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *see also Norman v.*

8    *Berryhill*, No. 17-cv-04108-SI, 2018 WL 4519952, at *13 (N.D. Cal. Sept. 19, 2018) ("The fact

9    that plaintiff 'sounded less depressed' on a few occasions does not mean that she was symptom-

10   free or that she was not disabled.").

11        The ALJ also reasoned that Dr. Akiyama's opinion "is not consistent with the claimant's

12   activities of daily living."  AR 27.  While inconsistencies with a claimant's activities of daily

13   living may be a basis to discount a medical opinion, this principle does not apply where "a holistic

14   view of the record does not reveal an inconsistency between the treating providers' opinions and

15   [the claimant]'s daily activities."  *Ghanim*, 763 F.3d at 1162.  Here, the ALJ noted that in a

16   November 2019 function report, E.P. "reported she was able to manage her own personal care

17   with reminders, shop in stores, prepare simple meals, take public transportation and travel alone,

18   count change, perform household chores including laundry and light cleaning, and she could

19   follow written instructions."  AR 27 (citing AR 350-357).  E.P.'s function report also states that

20   her partner helped her "with all chores"; her ability to handle money changed after her conditions

21   began because she "lose[s] count, short attention span" ; she prepared meals on a monthly basis;

22   and did not often go out and "can become a hermit, be anti-social."  AR 350-357.  The ALJ did

23   not sufficiently explain why she found the level of these activities to be inconsistent with Dr.

24   Akiyama's opinion, particularly when records from around this same period indicate mixed

25   progress in E.P.'s condition and functioning as discussed above.

26        Finally, the ALJ also found that "Dr. Akiyama's opinion is inconsistent with the opinion of

27   the [s]tate agency psychological consultants who had the opportunity to review more medical

28   evidence of record."  AR 27.  The ALJ does not identify the additional medical evidence or

United States District Court
Northern District of California

13

explain why any such evidence is material, and therefore, this reason is not supported by substantial evidence.[7]   Additionally, in view of the ALJ's error regarding the date of Dr. Akiyama's opinion and apparent focus on a period "one year after treatment and alcohol avoidance, or reduction in use" (AR 27), the Court cannot conclude that any error here was harmless.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (an error is "harmless" if "it is inconsequential to the ultimate nondisability determination, or that despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity") (internal quotations and citation omitted).

In sum, the ALJ's reasons for discounting Dr. Akiyama's opinion as "not persuasive" are not supported by substantial evidence.

### 3.   Caroline Salvador-Moses, Psy.D.

Psychologist Caroline Salvador-Moses is a consulting examiner who conducted a mental status evaluation of E.P. on December 27, 2019.  AR 815-819.  As part of her evaluation, Dr. Salvador-Moses reviewed E.P.'s records, including those from the San Mateo County Behavioral Health & Recovery Services.  AR 815.  She reported that E.P. arrived on time and was accompanied by her partner, who assisted E.P. in completing necessary paperwork.  *Id*.  She further observed that E.P. was friendly and cooperative, with a euthymic mood and congruent affect; was adequately oriented; made adequate eye contact; and had adequate grooming and hygiene, but appeared disheveled.  AR 816.  She further noted that E.P. demonstrated adequate attention and concentration during the evaluation, and had coherent, albeit hyperverbal, speech. *Id*.  While E.P. denied hallucinations, delusions, and psychotic symptoms, Dr. Salvador-Moses found that her thought process evidenced flashbacks and preoccupation with traumatic events. AR 815, 816.  Dr. Salvador-Moses noted that E.P.'s medical history included high blood pressure and a December 2018 mini stroke.  AR 815.  She also noted E.P.'s "history of severe trauma when Child Protective Services was involved because her mother was charged with child abuse," a

---

[7] As discussed below, where two medical opinions are equally well-supported and consistent with the record, an ALJ must explain how she considered other factors in determining that one opinion is more persuasive than the other.

1    history of domestic violence when E.P. was violent with a former partner in an attempt to defend

2    herself, as well as E.P.'s October 2018 psychiatric emergency when she had suicidal ideation and

3    overdosed on her cardiac medication.  AR 816.  E.P. reported that she had not used drugs in eight

4    years, but continued to drink alcohol ("enough to put to sleep"), was attending a substance abuse

5    treatment program, and was prescribed Zoloft and Trazodone.  *Id.*

6         A mini mental status exam showed that E.P.'s memory and recall were poor.  AR 816.

7    Additionally, Dr. Salvador-Moses noted that E.P. had impaired insight and judgment; was unable

8    to count serial sevens correctly; had poor math computation skills ("incorrectly added 12 + 15 as

9    16" and "unable to compute 55-12"); poor abstract reasoning skills ("did not know how a horse

10   and a tiger are alike or the meaning of the simple proverb 'Don't judge a book by its cover'");

11   suboptimal fund of information (unable to correctly identify the President of United States before

12   Obama) and suboptimal short-term memory (able to repeat five digits forward, but not backward).

13   AR 817.  Dr. Salvador-Moses diagnosed post-traumatic stress disorder, major depressive disorder,

14   and neurocognitive impairment.  *Id.*  Her diagnostic impressions noted that  neurocognitive

15   impairment is "likely to be a result of [E.P.'s] stroke and cardiac issues," and that E.P.'s

16   "[s]ymptoms cause distress and lead to clinically significant impairment in various areas of

17   functioning.  *Id.*  She assessed E.P. with moderate impairment of her abilities to concentrate,

18   "understand and carry out simple instructions and tasks," "carry out complex instructions and

19   tasks," "attend to usual work situations, including attendance, safety, etc.," and "interact

20   appropriately with the public."  AR 818.  Dr. Salvador-Moses assessed marked impairments of

21   E.P.'s pace and persistence, as well as her abilities to "deal with changes in a routine work

22   environment" and "interact appropriately with supervisors and co-workers."  *Id.*  Dr. Salvador-

23   Moses further noted that E.P. needs assistance managing funds and stated that her prognosis was

24   poor.  AR 817, 818.

25        The ALJ found Dr. Salvador-Moses's opinion "persuasive as to the moderate limitations

26   and not persuasive as to the marked limitations because the evidence supports no more than

27   moderate mental limitations."  AR 28.  Here, the ALJ found that Dr. Salvador-Moses's opinion

28   was supported by her own evaluation, but "is not consistent with the opinion of [s]tate agency

United States District Court
Northern District of California

15

psychological consultants at the initial and reconsideration level who opined the claimant had no more than moderate mental limitations and she was able to perform simple routine tasks, with limited personal contact." *Id*. The ALJ also found Dr. Salvador-Moses's opinion "inconsistent with the claimant's report that she is able to shop for food, get along fine with authority figures, and take public transportation." *Id*. (citing AR 35-80, 350-357).

E.P. argues that in assessing Dr. Salvador-Moses's opinion, the ALJ erred in two main respects. First, E.P. argues that although the ALJ credited Dr. Salvador-Moses's assessed "moderate" limitations as "persuasive," the ALJ did not account for those limitations in evaluating E.P.'s RFC or sufficiently explain any such departures from Dr. Salvador-Moses's assessment. Second, with respect to Dr. Salvador-Moses's assessed "marked" limitations, E.P. argues that the ALJ failed to properly evaluate the consistency of Dr. Salvador-Moses's opinion with respect to other record evidence.

Regarding E.P.'s first point, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015). As noted above, "an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them." *Watson*, 2023 WL 131062 at *3 (citing *Turner*, 613 F.3d at 1222-23). The key consideration is whether the ALJ's "assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Petrini v. Berryhill*, 705 F. App'x 511, 512 (9th Cir. 2017) ("The structure, citations, and language of the ALJ's decision show that the ALJ properly 'translated' the opinions of Drs. Bilik and Palmer into an RFC that embraced the limitations found by both doctors, even though the RFC finding did not mirror the language of their opinions.").

To the extent E.P. contends that the ALJ's RFC fails to account for Dr. Salvador-Moses's assessed moderate limitations in concentration, E.P. has not sufficiently argued or explained, either in terms of legal authority or the record evidence, why the ALJ's RFC fails to adequately encompass Dr. Salvador-Moses's assessed limitation or is otherwise inconsistent with the medical evidence. *See Stubbs-Danielson*, 539 F.3d at 1174 (ALJ's RFC limiting the plaintiff to "simple, routine, repetitive" work can "adequately capture[] restrictions related to concentration,

persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). However, the Court agrees that the ALJ's RFC limiting E.P. to "simple, routine tasks," "simple work-related decisions," "occasional interaction with the public (better working with things rather than people)," and to "using judgment and dealing with changes that are consistent with simple work" does not adequately address or encompass Dr. Salvador-Moses's assessed moderate limitation in E.P.'s ability to "attend to usual work situations, including attendance, safety issues, etc." (AR 818). *See Panziera v. Berryhill*, No. 17-cv-02719-LHK, 2018 WL 278623, at *20 (N.D. Cal. Jan. 3, 2018) ("[T]he Ninth Circuit and district courts in the Ninth Circuit have held that *Stubbs-Danielson* does not control in cases where the limitations relate to functional areas other than concentration, persistence, and pace, such as social functioning and attendance.") (citing cases); *see also Timothy B. v. Saul*, No. 20-cv-03411-SK, 2022 WL 181261, at *3 (N.D. Cal. Jan. 20, 2022) (same). Additionally, it is unclear whether the ALJ's RFC determination limiting E.P. to "simple, routine tasks," and "simple work-related decisions" adequately addresses Dr. Salvador-Moses's assessed moderate limitation in E.P.'s ability to understand and carry out simple instructions. *See Timothy B.*, at *4 (questioning that an RFC for "performing simple routine tasks and simple work-related decisions . . . effectively addresses the moderate limitations the above doctors found with respect to Plaintiff's ability to . . . understand and remember very short and simple instructions.").

To the extent the Commissioner relies on *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017) for the proposition that "moderate psychological symptoms do not preclude all work-related activities and do not in each instance require an ALJ to include limitations within the RFC finding" (Dkt. No. 19 at 22), the Commissioner overstates the import of that case. In *Shaibi*, the Ninth Circuit concluded that the ALJ did not err in providing a "quantitive" limitation on the plaintiff's ability to interact with others, even though two doctors opined on a "qualitative" limitation, where the ALJ's RFC was consistent with one doctor's assessed "moderate" social limitations. *Shaibi*, 883 at 1106-07. At bottom, *Shaibi* simply aligns with the general principal that an ALJ's assessment must be consistent with restrictions identified in the medical testimony. Other cases cited by the Commissioner are not to the contrary. *See, e.g., Bayliss v. Barnhart*, 427

1   F.3d 1211 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or

2   impairments that the ALJ found *neither credible nor supported by the record* is unnecessary.")

3   (emphasis added).

4          E.P.'s second point is that the ALJ did not properly evaluate the consistency of Dr.

5   Salvador-Moses's opinion in finding that her assessed "marked" impairments are "not

6   persuasive." *See* Dkt. No. 17 at 6-7.  Here, the ALJ explained that Dr. Salvador-Moses's opinion

7   is inconsistent with E.P.'s reported activities of "shop[ping] for food, get[ting] along fine with

8   authority figures, and tak[ing] public transportation," as well as with the opinions of the state

9   agency consultants.  AR 28.

10         The Court disagrees with E.P.'s suggestion that the ALJ failed to consider whether Dr.

11  Salvador-Moses's opinion is consistent with Dr. Akiyama's opinion and Dr. Brode's original

12  April 2020 opinion.  Dkt. No. 17 at 6.  The ALJ *did* note elsewhere in her opinion that those three

13  opinions are consistent.  *See* AR 27.  Moreover, the ALJ rejected Dr. Brode's original April 2020

14  opinion as unsupported and inconsistent with the record, and E.P. does not challenge that finding.

15  *Id.*  However, the Court agrees with E.P.'s other arguments that the ALJ's explanation for

16  discounting Dr. Salvador-Moses's opinion is not supported by substantial evidence.

17         As discussed above, while inconsistencies with a claimant's activities of daily living may

18  be a basis to discount a medical opinion, this principle does not apply where "a holistic view of the

19  record" does not show an inconsistency.  *Ghanim*, 763 F.3d at 1162.  To the extent the ALJ cites

20  statements from E.P.'s November 2019 function report, records from around that same period

21  indicate mixed progress in E.P.'s condition and functioning as discussed above, while later records

22  show greater improvement.  However, the ALJ did not sufficiently explain why she found the

23  level of E.P.'s activities (i.e., "to shop for food, get along fine with authority figures, and take

24  public transportation") to be inconsistent with all of Dr. Salvador-Moses's assessed "marked"

25  limitations in pace, persistence, and abilities to "deal with changes in a routine work environment"

26  and "interact appropriately with supervisors and co-workers" (AR 818).  Nor are any

27  inconsistencies between all of those assessed "marked" limitations and the level of the identified

28  activities readily apparent.

United States District Court
Northern District of California

1    The ALJ made no findings that Dr. Salvador-Moses's opinion is inconsistent with the

2    medical evidence, and as noted above, the ALJ found Dr. Salvador-Moses's opinion to be

3    supported by the findings of her own December 27, 2019 evaluation.  AR 28.  To the extent E.P.

4    argues that the ALJ may not "summarily reject" Dr. Salvador-Moses's assessment of "marked"

5    limitations based solely on inconsistency with the opinions of the state agency consultants (*see*

6    Dkt. No. 17 at 7), the Court construes E.P.'s motion to argue that, at a minimum, the ALJ was

7    required to articulate how she considered the remaining three factors in the Commissioner's

8    regulations—the treatment relationship, specialization, and any "[o]ther factors."  20 C.F.R.

9    § 404.1520c(b)(3).  The Court agrees.  *See id*. (ALJs should articulate how they considered factors

10   other than supportability and consistency, including the treatment relationship, when they find two

11   or more medical opinions about the same issue equally well-supported and consistent with the

12   record); *accord Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(3)).

13           Accordingly, the Court concludes that the ALJ failed to account fully for Dr. Salvador-

14   Moses's assessed limitations that the ALJ credited as "persuasive" and did not provide sufficient

15   reasons supported by substantial evidence for discounting other portions of Dr. Salvador-Moses's

16   opinion as "unpersuasive."

17           **B.      E.P.'s Allegations of Mental Dysfunction**

18           E.P. argues that the ALJ failed to provide clear and convincing reasons, supported by

19   substantial evidence, for discounting her allegations of mental dysfunction.

20           An ALJ is not "required to believe every allegation" of impairment.  *Treichler v. Comm'r*

21   *of Soc. Sec. Admin*., 775 F.3d 1090, 1106 (9th Cir. 2014).  In assessing a claimant's subjective

22   testimony, an ALJ conducts a two-step analysis.  First, "the claimant must produce objective

23   medical evidence of an underlying impairment or impairments that could reasonably be expected

24   to produce some degree of symptom."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)

25   (cleaned up).  If the claimant does so, and there is no affirmative evidence of malingering, then the

26   ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering

27   specific, clear and convincing reasons for doing so."  *Id*.  That is, the ALJ must make an

28   assessment "with findings sufficiently specific to permit the court to conclude that the ALJ did not

United States District Court
Northern District of California

arbitrarily discredit claimant's testimony." *Id.*  At the second step, "a claimant is *not* required to show that [her] medically determinable impairment could reasonably be expected to cause the severity of the symptom [she has] alleged, and is *not* required to produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Ferguson v. O'Malley*, No. 21-35412, — F.4th —, 2024 WL 1103364, at *6 (9th Cir. Mar. 14, 2024) (cleaned up, emphasis in original); *see also Garrison*, 759 F.3d at 1014.  "Only if the level of activity is inconsistent with [a] [c]laimant's claimed limitations do daily activities have any bearing on [a] [c]laimant's credibility." *Ferguson*, 2024 WL 1103364 at *6 (internal quotations and citation omitted).  A reviewing court is "constrained to review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

In her November 22, 2019 function report (AR 350-357), E.P. reported that she lives with her partner and her dog.  She stated that she was able to care for her dog and do light housework, with her partner's assistance; that she cooked "monthly"; that she could attend to her personal care, with reminders; and also needed reminders to take her medication.  Although E.P. stated that she did not go out often, she indicated that she could go out alone (but also needed someone to accompany her), and got around by walking, using public transportation, or getting a ride.  She reported being able to shop for food in stores about once per week and noted that she also went to medical appointments and group meetings.  Her interests and hobbies included "watching tv, walking with [her] dog," and "try[ing] to [sew]."  AR 354.  She noted that her conditions cause "insomnia" and affected her ability to handle money, stating that she "lose[s] count, short attention span."  *Id.*  E.P.'s identified social activities included socializing with her partner and on social media everyday, and going for walks around the neighborhood.  She indicated that she does not have any problems getting along with family, friends, neighbors; that she gets along "fine" with authority figures; and that she has not been laid off or fired from a job because of problems getting along with other people.  However, she also noted that she "can become a hermit, be anti[-]social."  AR 355.  E.P. checked boxes indicating that her conditions affect her memory, ability to complete tasks, and concentration; said she handles stress "okay,"; does not handle changes in routine "to[o] well"; and noted "feel[ing] like someone is following (paranoia)."  AR 356.  She stated that

United States District Court
Northern District of California

sertraline causes sleepiness, and that "[T]razodone" causes her to "get knocked out."  AR 357.

At the July 29, 2021 administrative hearing, E.P. testified that she can add and subtract two-digit numbers and is able to read, write, and understand simple messages in English, but is otherwise not able to concentrate and read; but also stated that she reads the news and is able to remember and understand what she read.  AR 46, 71.  Additionally, E.P. stated that "[m]entally [she] does not like to be around people," has "anxiety around other people," "[doesn't] trust them," and would "rather shelter at home and not go out[.]"  AR 58, 59.  She reported that she last drank alcohol about six months before the administrative hearing.  AR 60, 61.  She noted that her medications cause sleepiness and difficulty in staying focused for about four hours after taking them.  AR 63.  She testified that she sometimes has difficulty getting out of bed.  AR 65.  E.P. stated that her partner does all the grocery shopping because she "[doesn't] like to be around people" and "can't be around people anywhere, in public."  AR 66.  With respect to housework, E.P. testified that she "do[es] the vacuuming," can do her own laundry, prepares meals by microwaving frozen food, and can clean up after the meals she eats.  AR 67, 69.  She stated that she did not have friends she spends time with; did not attend religious services on a regular basis; had not patronized restaurants, bars, or similar establishments since August 31, 2018; and had not traveled outside San Mateo County since August 31, 2018.  AR 68.  E.P. identified her hobbies as walking her dog, noting that on a good day she can walk about a mile; otherwise she just walks around the block and returns home.  AR 68, 69.

The ALJ concluded that E.P.'s medically determinable impairments could be reasonably expected to cause the symptoms she described, but her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 22.  While the ALJ acknowledged that records indicated E.P.'s history of mental health issues, including depression, multiple suicide attempts, and alcohol use, the ALJ stated that following E.P.'s October 2018 hospitalization for a suicide attempt, "[s]ubsequent records showed her condition improved with treatment."  AR 23-24.  The ALJ also found that E.P.'s allegations regarding the limiting effects of her symptoms were inconsistent with her reported activities.  AR 25.  Here, the ALJ discounted E.P.'s "statements

about the intensity, persistence, and limiting effect of . . . her symptoms," explaining that those

statements are "inconsistent" with E.P.'s reports of being able to:

> manage her own personal care with no problems, prepare simple
> meals, perform household chores such as laundry and light cleaning,
> use public transportation, walk her dog, go on walks every other
> day/a lot, buy groceries, rearrange her apartment, and garden (Exs.
> 5E; 4F/33, 41; 15F/3, 9).  She was also able to care for her partner
> (Exs. 2F/18; 4F/37; 12F/11; 15F/10).  She reported plans of
> traveling to New York City with her boyfriend in April 2020 (Ex.
> 9F/5).  Further, she reported abusing Facebook and making efforts
> to stay in touch with friends to take care of her herself (Ex. 12F1).
> She also reported visiting with family in Castro Valley (Ex. 15F/3).

AR 25 (citing AR 350-357, 472, 688, 692, 695, 872, 954, 963, 1071, 1077, 1078).

       With respect to E.P.'s medical records, the ALJ correctly noted that the evidence shows an

overall improvement in E.P.'s symptoms, particularly with respect to more recent records.  Indeed,

E.P. does not appear to dispute that records later in the relevant period indicate that her symptoms

improved, such that E.P. reported that her symptoms were adequately managed, and her providers

noted that her condition was stable.  *See, e.g.*, AR 964, 1092, 1071-1072, 1074, 1077, 1291.  E.P.

appears to challenge only the assessment of her allegations based on an earlier period, i.e.,

"through the date of Dr. Akiyama's questionnaire and Dr. Salvador-Moses's consultative

psychological report," which she maintains demonstrate significant defects in her mental

functioning.  *See* Dkt. No. 17 at 14.  To the extent that the ALJ's evaluation of E.P.'s allegations

and statements is tied to her assessment of the medical evidence, which the Court has concluded

was erroneous (as discussed above), E.P.'s motion for summary judgment is granted and the

Commissioner's cross-motion for summary judgment is denied.

### C.    E.P.'s Past Relevant Work

       E.P. contends that the ALJ erred at step four of the sequential analysis in finding that she

has the RFC to perform her past relevant work as a dry cleaner helper and an animal caretaker.

Among other things, E.P. argues that the dry cleaner helper job is not past relevant work because it

did not constitute substantial gainful activity.  *See* Dkt. No. 17 at 16-17; *see also* 20 C.F.R.

§ 404.1560(b)(1) (defining "past relevant work" as "work that [a claimant] [has] done within the

past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant]

United States District Court
Northern District of California

1    to learn to do it.").  In his cross-motion for summary judgment, the Commissioner argues that E.P.

2    has waived this argument on appeal, noting that during the administrative hearing, E.P.'s attorney

3    stated that he had "[n]o objections" to the ALJ's finding that several jobs (including the dry

4    cleaner helper job) are past relevant work (AR 57).  *See* Dkt. No. 19 at 23; *see also Shaibi*, 883

5    F.3d at 1109 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)).  Although E.P.'s reply

6    brief purports to preserve "any issues raised in her Motion for Summary Judgment but not

7    discussed herein" (Dkt. No. 20 at 1), she has provided no response to the Commissioner's cross-

8    motion regarding the issue of waiver, and has not asserted any basis for the Court to find that there

9    has been no waiver.  Accordingly, the Court finds that on this appeal, E.P. has waived arguments

10   that the dry cleaner helper job is not past relevant work.

11        The Court does not address E.P.'s remaining arguments concerning the ALJ's findings

12   regarding her past relevant work, inasmuch the Court has found that the ALJ erred in assessing the

13   medical evidence and E.P.'s statements, and further proceedings may impact the ALJ's RFC

14   determination.

15                                    *****

16        In sum, the Court concludes that the ALJ erred in evaluating the opinions of Drs. Akiyama

17   and Salvador-Moses, as well E.P.'s statements regarding the limiting effects of her symptoms.

18   E.P.'s request to remand this case for further administrative proceedings therefore is granted.  On

19   remand, the ALJ must reconsider the persuasiveness of the opinions of Drs. Akiyama and

20   Salvador-Moses, the credibility of E.P.'s subjective testimony, and conduct any further

21   proceedings as necessary, consistent with this order.

22   **IV.   CONCLUSION**

23        Based on the foregoing, the Court grants in part and denies in part E.P.'s motion for

24   summary judgment, grants in part and denies in part the Commissioner's cross-motion for

25   summary judgment, and remands this matter for further administrative proceedings consistent with

26   ///

27   ///

28   ///

this order.  The Clerk of Court shall enter judgment accordingly and close this file.

      **IT IS SO ORDERED.**

Dated: March 31, 2024

Virginia K. DeMarchi
United States Magistrate Judge